**FIRE–TROL HOLDINGS, LLC, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Hunot Retardant Co. and ASTARSIS LLC, Defendant/Intervenors.**

**No. 05–205.**

United States Court of Federal Claims.

April 6, 2005.

Paul Dauer, Law Offices of Paul F. Dauer, Sacramento, California, and Jennifer Dauer McCready, Diepenbrock Harrison, Sacramento, California, for Plaintiff.

Paul R. Wellons, Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for Defendant.

John G. Horan, McDermott, Will & Emery, Washington, D.C. for Defendant/Intervenors.

## OPINION

SMITH, Senior Judge.

### INTRODUCTION

Plaintiff in this case makes an appealing argument. It has supplied the Forest Service with a fire retardant for 30 years and is one of only two suppliers of fire retardant to the agency. The agency has found that this retardant may be a danger to fish because of the effect of solar ultra-violet light on a chemical used in the retardant. Most of the retardant purchased by the Forest Service in the last year, and many previous years uses this chemical. If plaintiff is prohibited from selling this retardant it will go out of business, and the government will be left with *defacto* sole source procurement. At oral argument the plaintiff presented impressive evidence that this retardant was not a significant threat to any fish. The Court allowed plaintiff to add some of its scientific evidence to supplement the Administrative Record.

With the somewhat sympathetic facts presented by the plaintiff, plaintiff has an appealing case. However, plaintiff can not prevail on this challenge to the Forest Service's procurement. While the Court might have allowed the chemical to be on the qualified list of products if it was charged with administering this program, it is not so charged by Congress. This Court was not designated to be a super Forest Service administrator. It is not charged with ensuring that the Forest Service made the "right" scientific decision. It must defer to the Forest Services' expertise in managing those duties under the Forest Service's statutory mandate. The Court's only role is to determine if the Forest Service's decision was *so wrong* that it may be called arbitrary and capricious. Much as the Court may believe it has great wisdom about things woodlike and leafy, it can find no basis for saying that the Forest Service made an unreasonable call. Whether right or wrong in an ultimate sense, the Forest Service did its job properly and made a decision well within the bounds of rational administrative action. There was no hint of improper or unreasonable agency action, but only a complex scientific decision, considered over several years, with much input by the plaintiff. Plaintiff, quite legitimately believes it was the wrong decision, and maybe it was, but it was not arbitrary and capricious, and therefore this Court may not overturn it.

Therefore, after careful review and consideration, the Court GRANTS defendant's motion for judgment on the administrative record. Furthermore, because the plaintiff's claims fail on the merits, this Court need not reach the other issues raised by plaintiff's request for a permanent injunction and thus plaintiff's motion for permanent injunction is DENIED.

## FACTUAL BACKGROUND

Wildland fires can be tremendously destructive of lives, habitats and property. In order to protect the public lands, national forests, and grasslands from the possible destructive nature of wildland fires, the United States Department of Agriculture, Forest Service ("Forest Service"), as responsible agency, purchases fire retardant products to assist in fighting wildland fires. Fire–Trol Holdings, LLC ("Fire–Trol") is a manufacturer of fire retardant chemical products used to fight wildland fires in the United States, Canada and Europe. Fire–Trol is one of only two manufacturers that produces wildland fire retardant used by the Forest Service. *See generally,* Amed. Compl.

Wildland fire retardant is purchased through competitive procurements. On January 28, 2005, the Forest Service issued Invitation for Bids No. 49–05–02 ("IFB") for the acquisition of "Long–Term Fire Retardant—Full Service" and Request for Proposals No. 49–05–01 ("RFP") for the acquisition of "Long–Term Fire Retardant—Bulk" for permanent fire bases. Pl. Br. 45. On March 15, 2005, the Forest Service issued the RFQ for the acquisition of "National Long–Term Retardant—Bulk—FOB Origin" for "non-designated bases." *Id.* The IFB, RFP and RFQ each permit bidding only on products on the Qualified Products List ("QPL") based on Forest Service Specification 5100–304(b) (January 2000), as amended January 27, 2005. *Id.* The QPL is a list of qualified wildland fire retardant products which have been approved by the Forest Service in accordance with government specifications.

Certain fire retardant products contain a corrosion inhibitor called sodium ferrocynanide, or yellow prussiate soda ("YP Soda"). Amed. Compl. ¶ 13. Government studies have shown that YP Soda releases free cyanide into aquatic environments upon exposure to sunlight. AR 294, 1038, 1083, 2028. For this reason, the Forest Service amended its product specifications to prohibit YP Soda in wildland fire retardants. In addition, some fire retardant products contain gum-based thickeners. Because studies have demonstrated that adding gum thickeners to retardants changes their drop and coverage characteristics, AR 2659 *et seq.;* AR 2842 *et. seq.;* AR 2967 *et seq,* the Forest Service also amended its product specifications to require a gum thickener. Prior to the amendment to the specification, Fire–Trol manufactured three fire retardants that qualified and were available for award. Amed. Compl. ¶ 7. However, Fire–Trol's products contain YP Soda and do not have a gum thickener, and therefore the products are not available for procurement on the new QPL precluding Fire–Trol from making a bid. Amed. Compl. ¶¶ 25, 38, 50.

Fire–Trol filed its amended pre-bid complaint, request for permanent injunction and opposition to defendant's motion for summary judgment. Fire–Trol requested that the Forest Service be enjoined from proceeding with the IFB, RFP and RFQ and for this Court to issue an injunction preventing the Forest Service from implementing a ban on YP Soda or a requirement for gum thickener. Amed. Compl. ¶ 92. Fire–Trol bases this pre-bid protest in part on the ground that because of the modifications banning YP Soda and requiring gum thickener in all wildland fire retardants purchased by the Forest Service, only one supplier remains, in violation of the Competition in Contracting Act ("CICA"). Amed. Compl. ¶ 3. Defendant filed its motion for summary judgment on the administrative record and intervenors' filed their opposition to plaintiff's request for an injunction. A hearing was held on March 31, 2005. After reviewing the administrative record, motions and oral argument the defendant's motion is granted.

## DISCUSSION

### 1. Standard of Review

Plaintiff Fire–Trol requests the Court to set aside the decision of the Forest Service amending the specifications that prohibit fire retardants containing YP Soda and that require gum thickener. The request to set aside the decision of the Forest Service requires the Court to review the agency decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; *See also Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed.Cir.

2001). After review of an agency's decision, the Court will not set aside the decision unless it finds that the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

■ The Court recognizes that contracting officials may properly exercise wide discretion in their application of procurement regulations. *Impresa*, 238 F.3d at 1332 (citations omitted); *Electro–Methods, Inc. v. United States*, 7 Cl.Ct. 755, 762 (1985). In evaluating whether an agency acted arbitrarily and capriciously, the Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. As long as a rational basis is articulated and relevant factors are considered, the agency's action must be upheld. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

■ Furthermore, when the Court considers "a purely factual question within an area of competence of an administrative agency created by Congress," *Halter Marine, Inc. v. United States*, 56 Fed.Cl. 144, 159 (2003) (citing *Fed. Power Comm. v. Florida Power & Light Co.*, 404 U.S. 453, 453, 92 S.Ct. 637, 30 L.Ed.2d 600 (1972)), the Court will "recognize the relevant agency's technical expertise and defer to its analysis unless it is without substantial basis in fact." *Id.* Even with this narrow review however, the agency decision is not shielded from a "thorough, probing, in-depth review." *Redland Genstar, Inc. v. United States*, 39 Fed.Cl. 220, 231 (1997)(quoting *Citizens to Preserve Overton Park*, 401 U.S. at 415, 91 S.Ct. 814).

**2. Forest Service decision not to purchase fire retardant containing YP Soda and to purchase fire retardant containing gum thickener are not arbitrary and capricious**

■ A bid award may be set aside "if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332 (citations omitted); *TLT Constr. Corp. v. United States*, 50 Fed.Cl. 212, 213 (2001).

In evaluating whether an agency official's actions were rational, the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.' " *Impresa*, 238 F.3d at 1333 (citing *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C.Cir.1994)).

**A. YP Soda**

■ Fire–Trol contends that the Forest Service acted arbitrarily and capriciously as well as irrationally in its determination that fire retardant products containing YP Soda would no longer be listed on the QPL. First, Plaintiff argues that the Forest Service was irrational in its decision to ban YP Soda because the report relied upon failed to consider whether there was any material risk of the use of retardants containing YP Soda in the field. Pl. Br. 22. The report relied upon by the Forest Service was a March 2000 study completed by the United States Geological Survey ("USGS") demonstrating that the release of YP Soda containing retardant into streams or ponds resulted in cyanide levels in excess of the limit set by the Environmental Protection Agency ("EPA"). AR 1436, *see also* AR 149, 152. The USGS study also concluded that the presence of YP Soda in fire retardant resulted in significantly increased toxicity to the freshwater organisms studied. *Id.* This report was based on laboratory testing, not field testing, testing that plaintiff contends leads to an irrational decision by the agency because laboratory testing conditions are fixed and do not represent the true field conditions. Pl. Br. 22–24. Second, Plaintiff contends that the record contains no evidence that, when used in the field, retardants containing YP Soda pose any materially greater risk than those without YP Soda. Pl. Br. 22. In June 2002, the Forest Service commissioned a follow-up study from the USGS to further consider various aspects of the field use of retardant. Pl. Br. 26. Again, the USGS concluded that products containing YP Soda, in the presence of sunlight, evidenced enhanced toxicity. AR 1039. In sum, Fire–Trol asserts that the laboratory studies do not support a conclusion that toxicity which can be created in artificial laboratory conditions, or controlled

outdoor conditions, will result in a hazard when used in the field. Pl. Br. 22.

The Court defers to the Forest Service's decision that fire retardant products containing YP Soda, in the presence of sunlight, evidenced enhanced toxicity to the freshwater organisms studied. The Court finds that the decision by the Forest Service to preclude products containing YP Soda from its QPL is based on a rational hypothesis. The Court thus must find that the Forest Service decision was not irrational, arbitrary or capricious. The Court recognizes that the plaintiff is in disagreement with the Forest Service's scientific evidence, but because the Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions, the Court must defer to the agency. As long as a rational basis is articulated and relevant factors are considered, as they were here, the agency's action must be upheld. *Bowman Transp., Inc.*, 419 U.S. at 285–86, 95 S.Ct. 438.

**B. Gum Thickener**

■ The amended specification, as incorporated into the IFB, RFP and FRQ requires that fire retardant products contain a gum thickener. Pl. Br. 11. Fire–Trol's products do not contain such thickener. Numerous studies have demonstrated that adding gum-based thickeners to retardants improves their effectiveness. AR 2644, 2835, 2840. Fire–Trol does not dispute this fact. Pl. Br. at 32; *see also* AR 2989. Two characteristics determine a retardant's ability to reach and protect its target: viscosity and elasticity. Elasticity refers to a substance's ability to deform and return to its original shape. AR 2400, 2748–49. Viscosity refers to a product's resistance to flow. AR 2400, 2748–49. The Forest Service contends that liquids with a higher viscosity and elasticity will result in larger droplets striking the target. AR 2749, 2839. Comparative studies have demonstrated that, when dropped from the same altitude, more product reaches its target. AR 2644, 2835, 2840. Based on the scientific evidence, the Forest Service determined, assuming a product is gum-thickened, a minimum viscosity level of 100 centipoise will meet the Forest Service requirements

for viscosity and elasticity. AR 156. Plaintiff argues that the data is unreliable. Plaintiff asserts that because only two drops of retardants measuring approximately 100 centipoise in viscosity were done, such data does not rationally demonstrate the drop characteristic of a 100 centipoise gum thickened retardant.

The Court must also defer to the agency decision requiring gum thickener. The court can find no evidence that the decision was beyond the bounds that a rational decision maker, acting in good faith, could have made. Thus, the Court does not find that the decision to require gum thickener in fire retardant materials was arbitrary and capricious. The Court could second guess the agency and evaluate the various studies and probe experts. That, however, would be beyond of the judicial role. After review of the evidence, the Court finds the manner in which the agency made the decision, based on the administrative record, to require the inclusion of gum thickener in fire retardant products was one that a rational decision-maker, acting in good-faith, could make. The court may not relitigate the scientific data on this topic and the Forest Service's decision must stand. It should also be noted that the Court found no evidence of bad faith.

**3. Forest Service Procurement does not Violate CICA or FAR Regulations**

■ Generally, CICA requires procuring agencies must "obtain full and open competition through the use of competitive procedures." 41 U.S.C. § 253(a)(1)(A). In a full and open competition the procuring agency will not exclude any responsible source capable of meeting its needs from bidding. *SMS Data Prds. Group, Inc. v. United States*, 853 F.2d 1547, 1554 (Fed.Cir.1988). It is true that the Forest Service exercised its option to extend Fire–Trol's contract with the knowledge that Fire–Trol products contain YP Soda and do not contain gum thickener. Pl. Br. 14–15. Therefore, Fire–Trol contends that they are a responsible party capable of meeting the needs of the Forest Service regardless of the requirements of the amended specification. *Id.* The government, on the other hand, claims that the needs of the Forest Service changed with the amend-

ed specification and there was only one responsible source for procurement. Def. Reply 2.

There is an exception to the requirement that competition be full and open where the procurement is subject to "procedures otherwise expressly authorized by statute." 41 U.S.C. § 253(a)(1). 41 U.S.C. § 253c provides procedures for procurement of products with "qualification requirements." The Forest Service procurement is for products with qualification requirements and therefore the procurement procedures in 41 U.S.C. § 253c, not the procedures in 41 U.S.C. § 253, apply to the procurement. 41 U.S.C. § 253c does not have a requirement of full and open competition. 48 CFR § 6.30 (stating that 41 U.S.C. § 253c authorizes "contracting without providing for full and open competition"). Therefore Fire–Trol's claim that the Forest Service violated CICA for failure to have full and open competition must fail.

Fire–Trol also asserts that the Forest Service failed to comply with procurement procedures in FAR part 6. Specifically Fire–Trol claims that the Forest Service did not comply with FAR parts 6.303 and 6.304 necessary to have a full and open competition. However, the procedures in FAR part 6 implement the requirement for full and open competition in procurement required under 41 U.S.C. § 253. As pointed out above, 41 U.S.C. § 253 does not apply to the procurement at issue in this case and therefore the Forest Service was not required to comply with the procedures in FAR part 6.

■ The procedures outlined in FAR part 9 are applicable to acquisitions involving qualification requirements under 41 U.S.C. § 253c and these are the procedures the Forest Service was required to adhere to for this procurement. Fire–Trol contends that the Forest Service failed to comply with FAR part 9.202 which requires written justification for and approval of qualification requirements. Fire–Trol concedes that requirement was met in January 2005 with respect to the original January 2000 Specification 5100–304b but argues that there was no written justification for or approval of the amendment to that specification issued on

January 2005. Pl. Br. 19–20. However, the justification and approval procedures in FAR part 9.202 are not required for every amendment to the specification. Under FAR part 9.204(i)(2) agencies are required to reexamine qualified products if "the requirements in the specification have been amended or revised sufficiently to affect the character of the product". The Court finds that altering the fire-retardant ingredients for enhanced efficiency and safety does not substantially effect the character of the product.

■ Lastly, Fire–Trol contends that the Forest Service was required to abstain from soliciting bids unless there were at least two or more sources available to submit their products for qualification or that several sources would be available to provide the product in sufficient quantities under the Federal Standardization Manual ("FSM"). Specifically, Fire–Trol asserts that a sole procurement is contrary to law under the FSM. However, the requirements of the FSM apply only to federal specifications mandatory for use by all federal agencies and controlled by GSA and not to departmental specifications. 41 CFR § 101–29. Wildland fire retardant specifications are departmental insofar as they are not mandatory for use by all federal agencies and are not controlled by GSA. The Court finds the Forest Service followed the procedures required of it.

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendant's motion for judgment on the administrative record and DENIES plaintiff's motion for permanent injunction. The clerk is directed to dismiss the complaint. Parties to bear their own costs.

**IT IS SO ORDERED.**