**FIRE–TROL HOLDINGS, LLC, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**and**

**Hunot Retardant Company and Astaris, LLC, Intervenors.**

**Nos. 05–205C, 05–20501C.**

United States Court of Federal Claims.

Oct. 4, 2005.

Paul F. Dauer, Law Offices of Paul F. Dauer, Sacramento, California, and Jennifer L. McCready, Diepenbrock Harrison, Sacramento, California, for Plaintiff.

Paul Reid Wellons, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and William F. Ryan, Assistant Director, all of Washington, D.C., for Defendant.

John Gerard Horan, McKenna, Long & Aldridge, Washington, D.C., for Intervenors.[1]

## OPINION and ORDER

SMITH, Senior Judge.

Fire–Trol Holdings, LLC ("Fire–Trol"), one of two domestic manufacturers of wildland fire retardant, protests the award by the United States Department of Agriculture, Forest Service ("Forest Service") to Astaris, LLC ("Astaris") of contracts to "furnish, store, mix and load long-term fire retardant into airtankers." AR 308. Fire–Trol submitted two bids in response to Invitation for Bid No. 49–05–02. ("IFB") The first bid ("Bid No. 1") was deemed non-responsive because it bid fire retardants not on the Qualified Products List ("QPL") as required by the solicitation. Fire–Trol's second bid ("Bid No. 2") was first rejected as being an alternate bid, and then subsequently for being non-responsive to the invitation requirements. Fire–Trol alleges that both bids were responsive and that the Forest Service decision was arbitrary, capricious, or otherwise not in accordance with law.

Once again, the Court is faced with somewhat sympathetic facts presented by this Plaintiff. The Court did not find the testimony of the contracting officer, Ms. Colleen Hightower, to be convincing. It was at times confusing and contradictory as to her reasons for finding Fire–Trol's bid non-responsive. However, Plaintiff cannot prevail on this protest. While the Court is impressed with the creative bid provided by Fire–Trol, the Court finds that the bid was too creative and thus too difficult to allow Ms. Hightower, to determine a firm, fixed bid price. The purpose of soliciting firm, fixed price bids is so that the contracting officer is not left with ambiguous data upon which to decide what is the best deal for the government. The goal of government procurement law is to keep the system honest so that government officials can either make rational decisions or so that

administrators and judges, when necessary, can deal with irrational ones. Because the formula provided by Fire–Trol was too complicated, Ms. Hightower was unable to determine a fixed, firm price, even though Plaintiff believes otherwise. Plaintiff insists its formula requires numbers that are easily ascertainable by the contracting officer, but the Court is not so persuaded. Throughout this litigation, freight price has routinely been addressed as a fluctuating cost by both Defendant and Intervenor Astaris. Plaintiff has not provided this Court with a definitive cost of freight at any time. If the Court cannot determine the price after the contract award, then it would seem that the contracting officer would also have difficulty in obtaining the price and therefore her decision to reject the bid was not arbitrary and capricious.

The IFB clearly indicated that a firm, fixed price was necessary for a bid to be considered. After careful review of the pleadings, the administrative record, the testimony of Ms. Hightower, and oral argument the Court finds that Bid No. 1 did not satisfy the IFB requirement of bidding a product found on the QPL,[2] and that Bid No. 2 did not contain a firm, fixed price. Therefore, the Court hereby GRANTS Defendant's and Intervenor's motions for summary judgment upon the administrative record.

### Procedural History

In February of 2005, Plaintiff Fire–Trol filed a pre-award bid protest arising from the Forest Service's decision to amend its requirements for fire retardants used in the fighting of wildland fires. This Court found that the Forest Service acted within its discretion in deciding not to purchase fire retardant containing a particular chemical (YP Soda) and to purchase fire retardant containing a gum thickener. *Fire–Trol Holdings, LLC, v. United States,* 66 Fed.Cl. 36 (2005) (*Fire–Trol I*).

---

1. It should be noted that the Court heard argument on behalf of only one Intervenor, Astaris, LLC, even though Hunot Retardant Co. formally intervened and Mr. Horan represented both Intervenors.

2. This was resolved in *Fire–Trol Holdings, LLC, v. United States,* 66 Fed.Cl. 36 (2005) where this Court held that the Forest Service decision not to purchase fire retardant containing YP Soda and to purchase fire retardant containing a gum thickener was not arbitrary and capricious.

Subsequently, in May of 2005, Fire–Trol amended its complaint as a post-award bid protest challenging the Forest Service's decision to reject its bids as non-responsive. Fire–Trol asks the Court to set aside the Forest Service's decision that its bids are non-responsive, to set aside the decision that Astaris's bid is proper, and to hold that Astaris is not a responsible bidder. Second Amended Compl. 41.

Defendant and Intervenor filed motions for summary judgment or in the alternative motions for summary judgment upon the administrative record and Plaintiff responded. On July 21, 2005 the Court conducted a hearing in which the Contracting Officer, Ms. Colleen Hightower, testified. Thereafter, the Court invited the parties to submit supplemental briefs based on Ms. Hightower's testimony and the Court heard oral argument on September 19, 2005. The Court issued its oral ruling on September 26, 2005. This opinion explains that ruling in more detail.

### Factual Background

The Forest Service purchases a wide variety of fire retardant products to help in fighting wildland fires on public lands, national forests, and grasslands in the United States. Second Amended Compl. 5. To purchase these products, the Forest Service issued IFB No. 49–05–02, on January 28, 2005, seeking bids for the supplies and services to "furnish, store, mix and load long-term fire retardant into airtankers" at eight airtanker bases within the United States. AR 308. The government would award a one-year requirements contract with a one year option. AR 317, 341. On March 15, 2005, Fire–Trol submitted two bids in response to the IFB. In Bid No. 1, Fire–Trol based its pricing on its own products. In Bid No. 2, Fire–Trol based the pricing on Astaris products. AR 6011–350. In addition, Bid No. 2 contained two "caveats" or alternative methods of providing the retardant. *Id.*

On May 5, 2005, the Forest Service rejected both Fire–Trol bids as non-responsive. AR 6006. In its rejection letter, the con-

tracting officer, Ms. Hightower, explained that Fire–Trol's Bid No. 1 was rejected because the products were not offered products on the QPL and that Bid No. 2 was rejected as an impermissible alternate bid.[3] *Id.* Five days later, on May 10, 2005, Ms. Hightower drafted a memorandum memorializing a meeting she had regarding the bid made by Fire–Trol's sole competitor, Astaris. Ms. Hightower was concerned because the price bid by Astaris seemed high and posed a "possible hardship to some bases." *Id.* However, she concluded that the prices were "within the acceptable range for previous years of operation and considered reasonable" and the bid was ultimately awarded to Astaris. *Id.*

On May 11, in response to a letter from Fire–Trol to the Forest Service, Ms. Hightower drafted a second letter to Fire–Trol. In this draft letter, Ms. Hightower corrected the previously cited FAR sections and also clarified her original reasoning for rejection of Bid No. 2. AR 6007. With regard to Bid No. 2, she now reasoned that the bid imposed conditions modifying the requirements of the invitation. She held firm, however, that Fire–Trol's bids were still non-responsive to the IFB. This letter was never sent to Fire–Trol. Ms. Hightower testified that the letter was forwarded to the legal department for approval, and that approval was never given. Hightower Testimony p. 24.

### Discussion

*Jurisdiction and Standard of Review*

This Court has jurisdiction over post-award bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L. No. 104–320, § 12, 110 Stat. 3870, 3874. In reviewing an agency's decision in a bid protest, this Court uses the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2000). *Arch Chems., Inc. v. United States,* 64 Fed.Cl. 380, 384–85 (2005). Thus, a protestor must show that the agency's decision was "arbitrary, capricious, an abuse of discretion,

---

3. The specific Federal Acquisition Regulations (FAR) cited by Ms. Hightower was incorrect, but the FAR language provided was the correct lan-

guage to reject the bid as non-responsive. *See* AR 6009.

or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

To determine whether the Forest Service's decision was one that was arbitrary and capricious, the Court must review whether a rational basis for the agency's decision is lacking or a violation of an applicable regulation or procedure occurred during the procurement process. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1333 (Fed.Cir.2001). The Court is to determine "whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" *Id.* at 1332 (quoting *Saratoga Dev. Corp. v. United States,* 21 F.3d 445, 456 (D.C.Cir.1994)). The burden falls on the protestor to show that the award decision had no rational basis. *Id.* Moreover, when a protestor is asserting a violation of a regulation or procedure, a disappointed bidder must show "a clear and prejudicial violation of applicable statutes or regulations." *Galen Med. Assocs., Inc. v. United States,* 369 F.3d 1324, 1330–31 (Fed.Cir.2004) (quoting *Banknote Corp. of America v. United States,* 365 F.3d 1345, 1351 (Fed.Cir.2004)). In order to demonstrate prejudice, a protestor is required to show that "there was a 'substantial chance' it would have received the contract award but for agency errors in the bid process." *TLT Constr. Corp. v. United States,* 50 Fed.Cl. 212, 215 (2001).

To have standing, Fire–Trol must show that it had a reasonable chance to receive the award. Standing is not dependant on the merits of Fire–Trol's claim. In fact, to determine standing the Court assumes Fire–Trol would prevail on its non-responsiveness challenge. In this case, there were only two bidders. Nothing independent of non-responsiveness barred Fire–Trol from bidding. If Astaris were to be knocked out of the bidding, the Forest Service would then go to another bid and at that point the Forest Service would have to make an assessment as to whether or not to re-solicit the bid, take products not offered on the QPL, etc. At that point, the award might very well go to Fire–Trol. Thus, Fire–Trol has standing.

*Forest Service's Decision was not Arbitrary and Capricious*

█ On January 28, 2005, the Forest Service issued IFB No. 49–05–02 seeking bids for supplies and services to "furnish, store, mix and load long-term fire retardant into airtankers" at eight airtanker bases, for a period of one year with a one year option. AR 308, 317, 341. The IFB required bidders to provide unit prices for specified quantity increments that included all supplies and services necessary to load airtankers at the bases. *Id.* In addition, "only qualified products will be accepted for award purposes." AR 317. The scope of contract specifically defined the full service retardant base qualifications:

**C–1 SCOPE OF CONTRACT—Full Service Retardant Base**

(a) The Contractor shall supply, mix, store, and load long-term fire retardant, meeting **Specification 5100–304b as amended** into airtankers or as directed for use in suppression of wildland fires. Contract includes personnel necessary for operating the retardant base as specified herein.

(b) At the Government's request, the contractor shall also be required to offload retardant from aircraft, reload or load aircraft with water.

(c) The supplying of retardant into the aircraft shall include all equipment (except Government furnished), labor, and all retardant materials necessary for the handling of the retardant.

(d) Due to the sporadic nature of fire activity, the Government does not guarantee placement of any order for retardant.

(e) Contractor may bid fully qualified Long–Term Fire Retardant product listed on the Qualified Product List at the Time of opening as per the Schedule of items.

(f) Contractor furnished equipment shall be sufficient to meet daily demand as specified in Section J.

(g) As identified in Section J.I as applicable under other "base needs" the Contractor shall be responsible for the

disposal of wash down products and associated costs.

AR 324.

The offer further provided that "awards will be made to those Offerors submitting the lowest total price for each Bid Item furnishing the services to be performed and whose offer is responsive to this solicitation." AR 482.

In response to the IFB, Fire–Trol submitted two bids. To be a responsive bid, the "bid must comply in all material respects with the invitation for bids." 48 C.F.R. § 14.301 (2004). When determining whether a bid is responsive, the contracting officer compares each bid to the solicitation to determine whether the bidder has promised to perform in the precise manner and extent requested by the government. *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522 (1991). In addition, FAR 14.404–2(d) specifically states that a bid "shall be rejected when the bidder imposes conditions that would modify requirements of the invitation." In Bid No. 1, Fire–Trol did not use products offered on the QPL. In *Fire–Trol I,* this Court held that the Forest Service's decision to amend Specification 5100–304(b) was not arbitrary and capricious. *Fire–Trol Holdings,* 66 Fed.Cl. at 41. The amended specification changed the components of qualifying fire retardant. Therefore, when Fire–Trol submitted Bid No. 1 using products not listed on the QPL, the Forest Service was correct in finding the bid to be non-responsive. The Court finds that Fire–Trol did not comply in all material respects with the IFB and modified the requirements by not bidding a qualified product. Therefore, the contracting officer correctly rejected Bid No. 1.[4]

Bid No. 2 presents the Court with a more challenging analysis. In Bid No. 2, Fire–Trol submitted its bid with a qualified product. However, the bid contained two "caveats" or alternative sources of product. The bid stated:

All items bid in B–A Schedule of Items are based on either:

The USDA Forest Service acquiring the Phos–Chek directly from Astaris at the FOB Origin Plant price plus freight and supplying it to Fire–Trol at each base

or

Fire–Trol Holdings acquiring the Phos–Chek product directly from Astaris at a product price not to exceed the FOB Origin Plant price plus freight and the USDA Forest Service reimbursing Fire–Trol for the FOB destination base price of the product.

AR 6025–28.

After reviewing the bids and consulting with others at the Forest Service, the contracting officer rejected Bid No. 2 as nonresponsive. In her letter dated May 5, 2005, Ms. Hightower found it to be an alternate bid, which was not provided for in the IFB. AR 6006. Thereafter, Ms. Hightower received correspondence from Fire–Trol apparently disputing her findings. In response, Ms. Hightower drafted a second letter clarifying her first letter. AR 6007. First, Ms. Hightower realized that she had improperly cited the FAR sections she referenced. Additionally, she changed her reasoning for rejecting Bid No. 2. Rather than rejecting Bid No. 2 on the grounds of it being an alternate bid, the contracting officer wrote that the bid required the Forest Service to either acquire the product or reimburse Fire–Trol for the price of the product plus freight. Citing the IFB that required the bidder to supply the material, Ms. Hightower reaffirmed her original position that the bid was non-responsive. *Id.* This letter was never sent.

Due to the somewhat confusing facts with regard to the bid rejection, the Court held a hearing to clarify the basis for the contracting officer's decision to reject Bid No. 2. The Court found Ms. Hightower's testimony regarding her reasons for finding Fire–Trol's bids non-responsive inconsistent and confusing. At times, Ms. Hightower stated that her reasons for setting aside the bids were because freight prices fluctuated and that she could not tell if prices submitted in Bid No. 2 included the cost or price of the fire retardant and freight charges. *Id.* at 19–20,

---

4. Even though the letter dated May 5, 2005 rejecting the bid cited FAR provision 14.404–2(a), the contracting officer quoted the correct language from FAR 14.404–2(d).

22, 49, 101, 111, 118–19. At other times, Ms. Hightower stated that Fire–Trol's prices looked good and, but for the alternate bid, Fire–Trol would have been awarded the contract. *Id.* at 102–03.

With regard to the first "caveat" of Bid No. 2, the Court finds that the caveat changed the terms of the IFB by requiring the government to **acquire** the fire retardant product. The IFB clearly stated that this contract was a full service contract, a contract that clearly required the successful bidder to **supply** the product. Therefore, this caveat provision to the bid is not responsive to the IFB.

However, there remains the second caveat to Bid No. 2 that this Court must now address. It is the position of both the Defendant and Intervenor that the Forest Service's determination of non-responsiveness as to Fire–Trol's Bid No. 2 was based upon Fire–Trol's inability to provide a definite price for the fire retardant and its delivery, changing the terms of the IFB. Def. Supp. Br. 4; Int. Supp. Br. 3. In addition, both argue that Bid No. 2 was ambiguous with regard to freight price. Def. Supp. Br. 4; Int. Supp. Br. 4. Fire–Trol contends that Bid No. 2 neither changes the terms nor is ambiguous. Instead, Fire–Trol advances that Bid No. 2 provides the price of both retardant and freight in formulaic form, a formula that would require the contracting officer to look to the FOB Origin contract previously awarded to Astaris for product pricing information as well as section G–2 of the IFB for freight price. Oral Argument p. 5, Sept. 19, 2005.

While the Court finds the contracting officer's rationale confusing, it must also look to the rationality of the underlying decision. To determine this, the Court must decide whether the ultimate decision had a rational basis. The Court finds that a reasonable contracting officer would be unable to determine a fixed, firm price for Bid No. 2 as required by the IFB. Fire–Trol argues that the pricing for Phos–Chek is easily ascertainable because the Forest Service had already awarded the FOB Origin contract to Astaris. Oral Argument pp. 5, 24, Sept. 19, 2005. Fire–Trol also argues that freight prices are also easily ascertainable by the contracting officer looking to FOB payment provision G–2. *Id.* at 37.

It is true that the FOB Origin contract contains the price for the fire retardant product used in Fire–Trol's bid. Ms. Hightower could therefore ascertain the price of the product. However, there remains the problem that the contract contained three prices for the product. Second Amended Compl. Ex. 2. Fire–Trol concedes this. Oral Argument p. 5–6, Sept. 19, 2005. Thus, Bid No. 2 did not allow Ms. Hightower to determine a fixed, firm price for the product in order to insert that price into the formula provided for in Fire–Trol's bid. Further, it is clear that the price in the FOB Origin contract does not include freight, as the contract was FOB Origin and not FOB Destination. *Compare* FAR 2.101 *with* FAR 52–247–34. In the FOB Origin contract, the government is responsible for paying freight costs. The FOB Origin contract does not specify specific freight handlers or freight schedules. So, once again, Ms. Hightower was forced to determine a variable in the bid formula—the freight costs. Fire–Trol insists that section G–2 of the FOB payment provision contained in the IFB does not allow price to vary by date. Oral Argument p. 37, Sept. 19, 2005. In reviewing section G–2, the Court notes that it does not provide specific freight price information. Rather, it provides the three authorized modes of transportation available for contractors to use in order to be reimbursed. AR 6387. The Court notes this section was not referenced on the face of Bid No. 2 together with the caveat. Nor did Fire–Trol specify which mode of transportation it would be using in order for Ms. Hightower to compute the freight price. Since this is a full service contract, and hence FOB Destination, freight is part of the cost to the contractor. The Court finds that while creative, Fire–Trol's Bid No. 2 simply does not provide a firm, fixed price and therefore Ms. Hightower's decision was not arbitrary and capricious.

*Remaining Claims*

Fire–Trol argues that Astaris's price violated California state law because the price is

below cost. Pl. Reply 13–14. California state law is not determinative of Federal contract law except in certain situations not encountered here. *Baltimore Gas & Elec. Co. v. United States,* 133 F.Supp.2d 721, 745 (D.Md.2001) (citing *Public Util. Comm'n of Cal. v. United States,* 355 U.S. 534, 544, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958) (ruling that state regulations could not require common carriers to obtain state approval before offering reduced rates to the United States)). Fire–Trol bases its argument that Astaris's prices are below cost on the fact that some of the IFB unit prices are lower than prices on Astaris's FOB Origin contract thereby violating state law. Pl. Reply 10. The Court notes that indeed some of the unit prices are priced at a level much lower than the FOB Origin contract. However, the Court also notes that if one were to calculate the average unit price for each location in the IFB, Astaris's average unit price is not below cost.[5] *Compare* Second Amended. Compl. Ex. 1 *with* Ex. 3.

Additionally, Fire–Trol alleges that Astaris's bid was unbalanced because it was below cost and that it would cause an unacceptable risk to the government.[6] Second Amended Compl. ¶¶ 107, 115. Once again, Fire–Trol argues that the FOB Origin contract pricing is higher than other IFB products thus, Astaris. is offering products at a price below cost. *Id.* at ¶¶ 108, 112. Turning again to the FOB Origin contract and IFB, the Court finds the two are simply not comparable. The FOB Origin contract is for off the shelf retardant and the IFB is for base related retardant. Because of this difference, different costs would necessarily be incurred by Astaris and therefore pricing cannot be compared because different things are being procured. Second, Fire–Trol asserts that Astaris's bid is unbalanced because it quotes higher prices for the first 100,000 gallons of product, thus resulting in an impermissible advance payment. Pl Reply 20–21. This pricing structure Fire–Trol asserts would cause an unacceptable risk to the government. *Id.* at 16. It is clear from the administrative record that Ms. Hightower was concerned about Astaris' bid. AR 6009. However, it also clear that she concluded that Astaris's bid resulted from "the higher cost of raw material, increased freight cost due to higher gasoline prices, a reduction in aircraft availability, and the present economic conditions." *Id.* This procurement decision sets forth a rational calculation. It illustrates an appropriate process by which the contracting officer balances costs, needs, and likelihood of usage at unknown levels (depending on how many fires occur and how much retardant is used). The Court is not allowed to make this subtle judgment once it has determined that the contracting officer did so rationally and in violation of no law or regulation. *See TLT Constr. Corp.,* 50 Fed.Cl. at 213; *J & D Maintenance & Servs. v. United States,* 45 Fed.Cl. 532, 539 (1999) (rejecting argument that bid prices were advance payments when agency found justification for pricing structure). The only role of the Court is to confine decisions of the contracting officer to ones that are reasonable and not arbitrary and capricious.[7]

### *Motion For Reconsideration in Case No. 05–205* [8]

After careful review and consideration, Plaintiff's Motion for Reconsideration is DENIED. Plaintiff raises several issues that the Court has already adequately addressed

---

5. Fire–Trol asserts that Astaris is not a responsible bidder because it violates state law and claims that Astaris does not have the experience, personnel, and equipment necessary to perform the contract. Second Amended Compl. pp. 37–38. Fire–Trol has not provided any proof of the contention relating to its claims regarding Astaris's performance. The Court must, therefore, reject this argument.

6. The Forest Service used FAR 15.404–1(g)(3) to determine whether the bid was unbalanced. The Forest Service used this provision because it was referred there by FAR 14.408–2. Thus, Fire–

Trol's position that FAR 15.404–1(g)(3) is inapplicable is wrong.

7. The additional protest claims regarding the terms of Request for Proposal No. 49–05–01 and FOB Origin Request for Quotation No. 49–05–12 are denied in light of this Court's earlier holding in *Fire–Trol Holdings, LLC v. United States,* 66 Fed.Cl. 36 (2005)

8. The Court includes this case for informational purposes. A separate order will be issued in Case No. 05–205.

and will not address again. However, there are two points the Court will clarify. RFQ 49–05–12, ¶ F–6, states:

### F–6 *CONTRACT PERIOD AND OPTION TO EXTEND THE TERM OF THE CONTRACT*

The contract period shall extend for one calendar year from date of award. However, at the option of the Government, the contract may be renewed at one year periods. Current pricing will be obtained at yearly renewal. The renewal will be established with the same terms and conditions AR 4133.

First, the Court notes that Fire–Trol is correct in its motion for reconsideration that the five year limit was not specified in the above referenced RFQ as required by FAR 17.204(e). The Court's decision however must remain the same. The reason is that it cannot be shown in any way that there was prejudice to the Plaintiff. The only way Plaintiff might be prejudiced is if in several years Astaris is offered a sixth year. At that time Fire–Trol would have a valid claim to raise this issue. Therefore the issue is not currently ripe. The judicial process is not designed to flush out theoretical possibilities in government procurements. Further to the extent that this clause was ambiguous the Court finds that the ambiguity was patent since it should be clear to any reasonable person that part of the quote was left off.

Second, the Court will clarify and amend page 6 of its Original Opinion, in *Fire–Trol Holdings, LLC v. United States,* Case No. 05–205C, dated April 6, 2005 with the following highlighted material added to the text as noted:

### 3. Forest Service Procurement does not Violate CICA or FAR Regulations

Generally, CICA requires procuring agencies must "obtain full and open competition through the use of competitive procedures." 41 U.S.C. § 253(a)(1)(A). In a full and open competition the procuring agency will not exclude any responsible source capable of meeting its needs from bidding. *SMS Data Prds. Group, Inc. v. United States,* 853 F.2d 1547, 1554 (Fed. Cir.1988). It is true that the Forest Service exercised its option to extend Fire–Trol's contract with the knowledge that Fire–Trol products contain YP Soda and do not contain gum thickener. Pl. Br. 14–15. Therefore, Fire–Trol contends that they are a responsible party capable of meeting the needs of the Forest Service regardless of the requirements of the amended specification. *Id.* The government, on the other hand, claims that the needs of the Forest Service changed with the amended specification and there was only one responsible source for procurement. Def. Reply 2. The Court must defer to the Forest Service's determination of its needs, unless it finds that determination arbitrary and capricious or in violation of some statute or regulation. This the Court can not find. All the court can find is a legitimate argument on both sides. The Court can not as a matter of law or fact say which decision the Forest Service should have made. Both were reasonable options in light of the problems the Forest Service was dealing with. Thus, the Forest Services' decision should not be overturned.

Procurements subject to 41 U.S.C. § 253(c) are not required to provide for full and open competition. 48 CFR subpart 6.3. Because Fire–Trol was not capable of satisfying the needs of the Forest Service, the Forest Service is exempt under § 253(c)(1) from the full and open competition requirements.

There is an exception to the requirement that competition be full and open where the procurement is subject to subsections (b), (c), and (g) of § 253 and "procedures otherwise expressly authorized by statute." 41 U.S.C. § 253(a)(1). 41 U.S.C. § 253c provides procedures for procurement of products with "qualification requirements." The Forest Service procurement is for products with qualification requirements and therefore the procurement procedures in 41 U.S.C. § 253c, not the procedures in 41 U.S.C. 253, apply to the procurement. Although § 253c does not specifically exempt procurements from the full and open competition requirements of § 253, the section does recognize that use of a QPL will tend to limit competition and provides

its own procedures for encouraging competition that differ from those in § 253. Therefore Fire–Trol's claim that the Forest Service violated CICA for failure to have full and open competition must fail.

### Conclusion

The Court hereby **DENIES** Plaintiff's Motion for Reconsideration in the related case, Case No. 05–205. And after careful review in Case No. 05–20501, the Court finds that Bid No. 1 did not conform to the IFB requirement of bidding a product offered on the QPL, and that Bid No. 2 did not contain a firm, fixed price. Therefore, the Court hereby GRANTS Defendant's and Intervenor's motions for summary judgment upon the administrative record. The Clerk is directed to enter judgment.

**IT IS SO ORDERED.**